**No. 22-1392**

# United States Court of Appeals for the Federal Circuit

SOLAR ENERGY INDUSTRIES ASSOCIATION, NEXTERA ENERGY, INC., INVENERGY RENEWABLES LLC, EDF RENEWABLES, INC.,

*Plaintiffs –Appellants,*

UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, TROY MILLER, ACTING COMMISSIONER FOR U.S. CUSTOMS AND BORDER PROTECTION,

*Defendants – Appellants.*

*On Appeal from the United States Court of International Trade No. 1:20-cv-03941-GSK (Hon. Gary S. Katzmann)*

**CORRECTED BRIEF OF THE CATO INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS' PETITION FOR REHEARING EN BANC**

Anastasia Boden
*Counsel of Record*
Nathaniel Lawson
CATO INSTITUTE
1000 Massachusetts Ave., NW
Washington, DC 20001
(202) 216-1414
aboden@cato.org

*Counsel for Amicus Curiae*

Dated: January 25, 2024

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1392

**Short Case Caption** Solar Energy Indust. Ass'n et al. v. United States

**Filing Party/Entity** Cato Institute, Amicus Curiae

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/25/2024

Signature: /s/ Anastasia P. Boden

Name: Anastasia P. Boden

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Cato Institute | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTEREST OF *AMICUS CURIAE* .......................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

ARGUMENT ...........................................................................................................3

I. THE CONSTITUTION REQUIRES COURTS TO EXERCISE INDEPENDENT JUDGMENT WHEN SAYING WHAT THE LAW IS ...................................................................................................3

II. *MAPLE LEAF*'S FOREIGN AFFAIRS EXCEPTION IS NOT JUSTIFIED BY PRECEDENT AND SHOULD BE OVERRULED. ............7

CONCLUSION .......................................................................................................12

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ...........13

CERTIFICATE OF SERVICE ..............................................................................14

# TABLE OF AUTHORITIES

## Cases

*Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896 (2022) ....................7

*Am.n Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239 (Fed. Cir. 1985) ....................7, 9

*Becerra v. Empire Health Found.*, 142 S. Ct. 2354 (2022)....................6

*Biden v. Texas*, 142 S. Ct. 2528 (2022) ....................11

*Burlington Northern Santa Fe Ry. v. Loos*, 139 S. Ct. 893 (2019) ....................7

*Chevron v. NRDC*, 467 U.S. 837 (1984) ....................5

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821) ....................10

*Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261 (2016) ....................6

*Decatur v. Paulding*, 39 U.S. 497 (1840) ....................5

*Florsheim Shoe Co. v. United States*, 744 F.2d 787 (Fed. Cir. 1984)....................7, 8

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013)....................11

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) ....................7

*Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985)....................2, 7

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) ....................3

*Nielsen v. Preap*, 139 S. Ct. 954 (2019) ....................7

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015).................... 3, 4, 5

*Pugin v. Garland*, 143 S. Ct. 1833 (2023)....................6

*Solar Energy Indus. Ass'n v. United States*, No. 2022-1392, 2023 U.S. App. LEXIS 30058 (Fed. Cir. Nov. 13, 2023) ....................2

*South Puerto Rico Sugar Co. Trading Corp. v. United States*, 167 Ct. Cl. 236 (Fed. Cir. 1964)....................8

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018).................... 10, 11

*United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936) ....................9

*Zivotofsky v. Clinton*, 566 U.S. 189 (2012) ....................10

**Other Authorities**


Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 YALE L.J. 908 (2017) ....................6

Amy Howe, *Justices Schedule Major Cases on Deference to Federal Agencies*, SCOTUSBLOG (Nov. 17, 2023, 1:53 PM) ....................7

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS (2012) ....................11

Gary Lawson & Guy Seidman, *The Jeffersonian Treaty Clause*, 2006 U. ILL. L. REV. 1 (2006)....................3

Gary Lawson & Stephen Kam, *Making Law Out of Nothing at All: The Origins of the Chevron Doctrine*, 65 ADMIN. L. REV. 1 (2013) ....................5, 6

*INS v. Chadha*, 462 U.S. 919 (1983) ....................4

Isaiah McKinney, *The Chevron Ball Ended at Midnight, but the Circuits are Still Two-Stepping by Themselves*, YALE J. ON REG. NOTICE & COMMENT (Dec. 18, 2022) ....................6

MONTESQUIEU, I THE SPIRIT OF LAWS (Thomas Nugent, trans., 3d ed. 1758) ..........5

THE FEDERALIST NO. 51 (James Madison) (Clinton Rossiter ed., 1999)...............3, 4

THE FEDERALIST NO. 78 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ..........4

Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 COLUM. L. REV. 939 (2011)....................5

*United States v. United States Dist. Court*, 407 U.S. 297 (1972)....................4


**Constitutional Provisions**


U.S. CONST. art. III, § 1....................3

## INTEREST OF *AMICUS CURIAE*[1]

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government. Cato's Robert A. Levy Center for Constitutional Studies was established in 1989 to help restore the principles of limited constitutional government that are the foundation of liberty. Toward those ends, Cato publishes books and studies, conducts conferences, and produces the annual *Cato Supreme Court Review*.

This case interests Cato because judicial deference to executive interpretations of the law undermines the separation of powers, and the separation of powers is one of the fundamental constitutional protections against government overreach.

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this case, the panel essentially handed over its Article III authority to the Executive branch. Under the panel's opinion, a court reviewing an executive interpretation of statutory authority involving foreign affairs does not "decide

---

[1] No part of this brief is authored by any party's counsel; nobody but *amicus* funded its preparation and submission. The source of *amicus*'s authority to file this brief is the attached motion for leave to file which *amicus* respectfully asks the Court to grant. As noted in that motion, counsel for all parties have indicated they are not opposed to the filing of this brief.

whether the government's interpretation of the statute is correct . . . as an original matter" or even "evaluate the relative merits of the parties' competing interpretations," but only decides "whether the President's interpretation . . . is a clear misconstruction of the statute." *Solar Energy Indus. Ass'n v. United States*, No. 2022-1392, 2023 U.S. App. LEXIS 30058, at *16 (Fed. Cir. Nov. 13, 2023). For this highly deferential standard, the panel relied on *Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985). This standard is contrary to Supreme Court precedent and inconsistent with the separation of powers, and it should be overruled *en banc*.

The Framers understood that the separation of powers is necessary to protect individual liberty. One key aspect of the separation of powers is judicial review of executive action. But for judicial review to successfully check the excesses of the other branches, that review must be independent. *Maple Leaf*'s standard undermines that independence.

*Maple Leaf* is not just contrary to the original design of the Constitution; it is also out of step with modern administrative law doctrines. The Supreme Court now consistently applies the plain meaning of congressional statutes without reflexive deference, even in cases involving foreign affairs. Courts must not artificially hem in broad statutory grants of authority from Congress to the executive branch, but they also must not stretch the meaning of statutes to the executive's preferred

meaning. *Maple Leaf* wrongly demands that courts defer to the executive rather than apply the plain meaning of statutes in foreign affairs cases.

This Court should grant review *en banc* to overrule *Maple Leaf*'s misguided standard.

## ARGUMENT

### I. THE CONSTITUTION REQUIRES COURTS TO EXERCISE INDEPENDENT JUDGMENT WHEN SAYING WHAT THE LAW IS.

Article III vests the judicial power solely in the federal courts. *See* U.S. CONST. art. III, § 1. The core of that judicial power is "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Exercising that power faithfully requires courts to "exercise [their] independent judgment in interpreting and expounding upon the laws." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 119 (2015) (Thomas, J., concurring).

The Framers understood that it is "essential to the preservation of liberty" that the different powers of government be exercised by separate, independent branches. THE FEDERALIST NO. 51, at 289 (James Madison) (Clinton Rossiter ed., 1999). When observing the Constitution's structure, no feature is more evident than the separation of powers between the legislative, executive, and judicial branches. Gary Lawson & Guy Seidman, *The Jeffersonian Treaty Clause*, 2006 U. ILL. L. REV. 1, 20 (2006). Yet inevitably, there is a "hydraulic pressure inherent within each of the separate

Branches to exceed the outer limits of its power." *INS v. Chadha*, 462 U.S. 919, 951 (1983). To protect liberty against this pressure, each branch must be given "the necessary constitutional means, and personal motives, to resist encroachments of the others." THE FEDERALIST NO. 51, *supra*, at 289–90. The judiciary is no exception: it serves as an "independent check upon executive discretion." *United States v. United States Dist. Court*, 407 U.S. 297, 317 (1972).

Judicial review is the tool by which the judiciary checks the other branches. As Alexander Hamilton stated: "Limitations [on government] . . . can be preserved in practice no other way than through the medium of the courts of justice; whose duty it must be to declare all acts contrary to . . . the Constitution void." THE FEDERALIST NO. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed., 1961). The Framers expected that through judicial review, courts would protect the people against both Congress exceeding its enumerated powers and the executive extending laws beyond their meanings. *See Perez*, 575 U.S. at 124–26 (Thomas, J., concurring).

But for judicial review to successfully check the excesses of the other branches, the judiciary must be independent from the legislative and executive branches. "[T]here is no liberty if the power of judging be not separated from the legislative and executive powers." THE FEDERALIST NO. 78, *supra*, at 466 (quoting

MONTESQUIEU, I THE SPIRIT OF LAWS 181 (Thomas Nugent, trans., 3d ed. 1758)). The vital importance of judicial independence is reinforced by several provisions of the Constitution, including the Good Behavior and Judicial Compensation Clauses, which guarantee life tenure and salary protection for Article III judges. *See Perez*, 575 U.S. at 121–22 (Thomas, J., concurring).

In line with this constitutional design, American courts have historically exercised independent, non-deferential judgment. In 1840, the Supreme Court stated that "[i]f a suit should come before this Court, which involved the construction of . . . [a statute], the Court certainly would not be bound to adopt the construction given by the head of a department. And if they supposed his decision to be wrong, they would, of course, so pronounce their judgment." *Decatur v. Paulding*, 39 U.S. 497, 515 (1840). *De novo* review, rather than deference to executive interpretations, was the norm prior to the twentieth century. *See* Thomas W. Merrill, *Article III, Agency Adjudication, and the Origins of the Appellate Review Model of Administrative Law*, 111 COLUM. L. REV. 939, 946–53 (2011). And even up until *Chevron v. NRDC*, 467 U.S. 837 (1984), agencies generally did not receive deference on pure questions of law. *See* Gary Lawson & Stephen Kam, *Making Law Out of Nothing at All: The Origins of the Chevron Doctrine*, 65 ADMIN. L. REV. 1, 13–29 (2013). To the extent that nineteenth-century courts "deferred" to executive interpretations of a statute, they only did so for interpretations that were longstanding

and contemporaneous with a statute's enactment, and only because such interpretations provided good evidence of the statute's meaning. *See* Aditya Bamzai, *The Origins of Judicial Deference to Executive Interpretation*, 126 YALE L.J. 908, 916 (2017). This was not true legal deference, but merely treating good evidence of statutory meaning as persuasive. *See* Lawson & Kam, *supra*, at 10–11. Courts did not defer to executive interpretations simply because the interpretations were made by the executive. *See* Bamzai, *supra*, at 916.

Although the Supreme Court went through a period of excessive deference post-*Chevron*, in recent years the Court has returned to consistently deciding the meaning of statutes without deference to executive interpretations. The Supreme Court has not deferred to an executive interpretation under *Chevron* since 2016.[2] *See* Isaiah McKinney, *The Chevron Ball Ended at Midnight, but the Circuits are Still Two-Stepping by Themselves*, YALE J. ON REG. NOTICE & COMMENT (Dec. 18, 2022). Meanwhile, the Supreme Court has frequently decided statutory interpretation cases using the traditional tools of construction without even mentioning *Chevron*. *See, e.g.*, *Pugin v. Garland*, 143 S. Ct. 1833 (2023); *Becerra v. Empire Health Found.*, 142 S. Ct. 2354 (2022); *Am. Hosp. Ass'n v. Becerra*, 142

[2] The most recent such case was *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261 (2016).

S. Ct. 1896 (2022); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020); *Nielsen v. Preap*, 139 S. Ct. 954 (2019); *Burlington Northern Santa Fe Ry. v. Loos*, 139 S. Ct. 893 (2019). The Supreme Court is currently considering whether to overrule *Chevron* outright. *See* Amy Howe, *Justices Schedule Major Cases on Deference to Federal Agencies*, SCOTUSBLOG (Nov. 17, 2023, 1:53 PM)[3]. In practice, the Supreme Court has already returned to the correct and historically supported approach: It does not defer to the executive on pure questions of law.

## II. *MAPLE LEAF*'S FOREIGN AFFAIRS EXCEPTION IS NOT JUSTIFIED BY PRECEDENT AND SHOULD BE OVERRULED.

*Maple Leaf* held that, in foreign affairs cases, the courts have a "very limited role" in reviewing executive actions and can only overturn those actions based on finding a "clear misconstruction of the governing statute." 762 F.2d at 89. Two cases were cited in support of this proposition: *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 793, 795–97 (Fed. Cir. 1984), and *American Ass'n of Exporters & Importers v. United States*, 751 F.2d 1239, 1248–49 (Fed. Cir. 1985). But in fact, neither case supports such deference.

[3] Available at http://tinyurl.com/4j4er3ek.

*Florsheim Shoe*'s discussion of foreign affairs came amidst several pages of detailed statutory interpretation. *See* 744 F.2d at 792–95. The opinion did not say that the executive is owed deference to its statutory interpretations in foreign affairs cases, but merely that courts should not artificially hem in broad grants of authority in that area. *See id.* at 793, 795. The one case that *Florsheim Shoe* cites for the proposition makes this point even more clearly. *See South Puerto Rico Sugar Co. Trading Corp. v. United States*, 167 Ct. Cl. 236, 253 (Fed. Cir. 1964).

The court in *South Puerto Rico* did not state that courts should refuse to apply the plain meaning of statutes in foreign affairs cases—rather, it said the opposite. The court noted that Congress frequently grants the executive broad authority and discretion in statutes involving foreign affairs. *See id.* at 252 ("[A] delegation of unusually extensive discretion to the President is not uncommon in the external realm."). The court then declared that "a grant to the President which is expansive to the reader's eye should not be hemmed in or 'cabined, cribbed, confined' by anxious judicial blinders." *Id.* at 253. This was not a call for deference to executive interpretations, but rather a call for courts not to artificially narrow broad delegations in statutory texts. *South Puerto Rico* affirmed that it is the role of Congress, not the courts, to determine the executive's leeway regarding foreign affairs. And courts should determine the amount of leeway given by looking to a statute's plain meaning.

The other case cited by *Maple Leaf* provides no better support for its holding. The cited portion of *American Ass'n of Exporters & Importers* did not involve executive interpretation of a statute, but rather the factual basis for a regulatory determination. *See* 751 F.2d at 1246. The court had performed multiple pages of statutory interpretation without deference in the preceding section. *See id.* at 1246–48. And although the court did note that the case involved foreign affairs, *see id.* at 1248, it did so for the same reason the court did in *Florsheim Shoe* (it even cited *Florsheim Shoe* for support). Just like *Florsheim Shoe*, the *Exporters & Importers* opinion was a call for reading broad delegations accurately and without bias. It was not a call for deference to strained executive-branch legal interpretations.

Nor is there any more support for the *Maple Leaf* rule in Supreme Court precedent. The Supreme Court's major statutory interpretation opinions in foreign affairs cases have all applied the plain meaning of statutes. The Court has rightly left to Congress the job of giving the executive sufficient authority and discretion in foreign affairs. In *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304 (1936), the Court held that such legislative delegation of authority to the executive is constitutionally permissible. *See id.* at 322. But *Curtiss-Wright* never instructed lower courts to depart from the plain meaning of statutes or defer to less plausible executive interpretations when determining whether and how much authority has been given.

*Zivotofsky v. Clinton*, 566 U.S. 189, 194–201 (2012), further supports independent judicial review in foreign affairs cases. The Court rejected the idea that cases involving sensitive foreign policy considerations are beyond the scope of the judiciary. The Court declared that "the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Id.* at 194 (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821)). The Court then distinguished statutory and constitutional interpretation from "supplant[ing] a foreign policy decision of the political branches with the courts' own unmoored determination," upholding the former as a "familiar judicial exercise." *Id.* at 196. Courts decide statutory claims even if they affect sensitive foreign policy judgments made by the executive; only policy determinations are off-limits.

*Trump v. Hawaii*, 138 S. Ct. 2392 (2018), was no different. When an executive proclamation restricting immigration from certain foreign nations was challenged on statutory grounds, the Court rejected the claim because it found the statute's "plain language . . . grants the President broad discretion to suspend the entry of aliens into the United States." *Id.* at 2408. The Court spent many pages analyzing the statutory arguments. *See id.* at 2407–15. The Court only hinted at deference to the executive regarding the sufficiency of the executive's *factual* findings justifying the proclamation, not its legal findings. *See id.* at 2409. The Court emphasized that it was Congress that had deferred to the executive on foreign policy matters in the case,

providing a "facially broad grant of power" that "exudes deference to the President in every clause." *Id.* at 2408, 2410. The Court simply applied what was, in its view, the plain meaning of the congressional statute.

Even in *Biden v. Texas*, 142 S. Ct. 2528 (2022), where the Supreme Court considered the "foreign affairs consequences" of a statutory interpretation that would have limited the executive, *id.* at 2543, it did so only as additional support for its holding after first rigorously analyzing the statutory text to determine the objective statutory meaning. *See id.* at 2541–43. Furthermore, the Court merely noted that the significant burden on diplomatic relations that the rejected statutory interpretation would have imposed was evidence that Congress did not intend that interpretation. *See id.* at 2543. This reasoning is not one of deference but rather is analogous to the absurdity canon, a standard canon of statutory interpretation. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 234–39 (2012). While there is one sentence in the opinion that *could* be construed as supporting a clear statement rule for Congressional restrictions on executive discretion in the field of foreign policy, the case cited involves the longstanding presumption against the extraterritorial application of statutes and does not support such a general rule in other contexts. *See Biden v. Texas*, 142 S. Ct. at 2543 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115–116 (2013)).

Overall, there is no basis in the Supreme Court or this Court's pre-*Maple Leaf* precedents for deferring to the executive on pure questions of law in foreign affairs cases. Therefore, *Maple Leaf* should be overruled.

**CONCLUSION**

For the above reasons, and those stated by plaintiffs-appellants, this Court should grant review *en banc*.

Respectfully submitted,

Anastasia Boden
*Counsel of Record*
Nathaniel Lawson
CATO INSTITUTE
1000 Massachusetts Ave., NW
Washington, DC 20001
(202) 216-1414
aboden@cato.org

*Counsel for Amicus Curiae*

Dated: January 25, 2024

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) and Federal Circuit Rule 32(a) in that the brief contains 2,618 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) in that the brief has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Times New Roman font.

January 25, 2024

*/s/ Anastasia Boden*
Anastasia Boden

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on January 25, 2024, she electronically filed the foregoing *amicus curiae* brief with the Clerk of the Court for the Federal Circuit using the CM/ECF system. The undersigned also certifies that all participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

January 25, 2024

*/s/ Anastasia Boden*
Anastasia Boden

*Counsel for Amicus Curiae*